The next case this morning is 525-0220, People v. Mosley. Arguing for the appellant is Imani Thornton. Arguing for the appellee is Stephanie Raymond. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning. We have some interesting cases today. One we just had was fairly interesting. We had lots of questions, so I don't know if we have as many questions for you all, but we're looking forward to your arguments. We've read the brief, so we're ready to hear what you have to say about it. Ms. Thornton, are you ready to proceed? Yes, I am, Your Honor. All right. May do so. Thank you. Good morning. May it please the court. My name is Imani Thornton with the Office of the State Appellate Defender for Stephan Mosley. In this trial against Mr. Mosley, several issues arose, but one factor unites them all. Trial counsel's consistent actions, or lack thereof, were so erroneous that the results of this trial cannot be trusted. Therefore, this court should reverse under Issue 1, reverse end of remand for a new trial on all charges under Issue 2, or grant Mr. Mosley a new trial for the stolen firearm charges under Issues 2 through 5. For the sake of brevity, I will be focusing on Issues 1, 3, 4, and 5, but I'm happy to answer questions about any of the issues, Your Honors. The first issue I will address today is the supposed protective sweep conducted while officers were executing a search warrant for someone else that ended with officers searching in a pocket. Regarding Issues 3, 4, and 5, my client should be granted a new trial on the stolen firearm charges due to counsel's failure to object to incorrect jury instructions and hearsay that facilitated the state's case. Regarding the protective sweep issue, trial counsel failed to file a motion to suppress items found in Mr. Mosley's home, even though those items were found due to an unconstitutional search. The police called this search a protective sweep, but under Maryland v. Bowie, protective sweeps must be cursory and may only occur in places immediately adjoining the place of arrest from which an attack can be immediately launched, or when officers have articulable facts which, when taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. Neither of those circumstances existed here, where officers entered my client's home, and that search ended with a search of pant pockets found within a pile of laundry in my client's master bedroom. The state failed to present any conclusory evidence that the pant pocket, the pile of laundry, or the master bedroom that officers entered and searched immediately adjoined the living room in which the arrest of Mr. Pickens took place. What is clear from the record is neither that pant pocket nor pile of laundry are constitutionally searchable places under the first prong of Bowie. Let's assume that's correct. When officers entered the apartment and they observed Pickens, I believe, lying on the couch, and I believe that he was near a magazine, firearm magazine, and a bag of cannabis, he was the person that was wanted, I believe, for the shooting of his girlfriend. So based on those facts and putting aside the magazine that was found when the officer kicked over the pile of clothes, putting that aside, did the officers have probable cause to obtain a search warrant based on those facts? My memory is that the gun that was used in the shooting of the girlfriend had not been located at that point. Is that correct? Thank you for the question, Your Honor. It's our position that police did not have probable cause at that moment, and an officer, Blackburn, testified that he did not think he had probable cause until he saw the magazine within the pant pocket to obtain the search warrant, Your Honor. So there was no mention of that cannabis or the magazine as the basis of that search warrant. Fortunately, we don't have a search warrant, but magazine is indicated as the turning point from the so-called protective sweep to the getting of a search warrant. And to that point, there's no evidence in the record confirming that officers possessed articulable facts that would justify the search in the bedroom due to fear of surprise attack from that pant pocket, pile of laundry, or my client's master bedroom. So Officer Blackburn testified that he conducted the so-called protective sweep after learning about the presence of small children in the home. There's no Illinois case that holds that officers' concern of safety of children alone can justify a protective sweep. However, there is Illinois case law finding that officers cannot search in places where there is no evidence that searching that space was conducted to protect the safety of police. As briefed, I point to Rushing and Perini in the 1st District where officers searched Red Toolbox and Duffel Bag, and those were found to be unconstitutionally searchable places. So, indeed, this court found… But, Cathal, isn't it more about the proximity of the location? I mean, wouldn't it be reasonable for the officers to go into the bedroom to make sure that someone isn't hiding there? I don't know the size of the apartment. I don't see a video in the record, so I don't have that information. But isn't it about proximity? That's correct, Your Honor. As briefed, we don't have a floor plan. We don't have video of that apartment. But in absence of that, we cannot make a determination that the apartment was proximate enough to Mr. Pickens' arrest to know whether or not it meets the first prong of Bowie, Your Honors. But even if we argue that there is proximity in that bedroom, there is no indication that the pile would have been a searchable place, and certainly not the pocket, Your Honors. So, just for the sake of time, Your Honors, I just wanted to move quickly to concluding that trial counsel's failure to file a motion to suppress all the items found in the apartment that stemmed from police's protective sweep prejudiced my client as they were the only basis for the charges. And we ask the court to reverse Mr. Mosley's charges or remand for a suppression hearing. I can also answer any more questions, Your Honors, but I know we're running short on time. I'm still sure you have four minutes. Do you have anything else you wanted to say?  Yes. So, I'm turning to the third issue here. And trial counsel's errors continued when he allowed the state to successfully propose a made-up law and then allowed the trial court to issue that made-up law to the jury. This incorrect law conveniently enabled the state to meet its burden of proving that Mr. Mosley knew he possessed stolen firearms. That instruction given to the jury stated that the jury could sustain the charge if the defendant knew that the firearm was stolen and if the defendant obtained control of the firearm under such circumstances that would reasonably induce him to believe the firearm was stolen or converted. And this is not the standard. The should-have-known standard is not the correct law. Nowhere can the standard be found in the statute or as an IPI. The state drafted it to win its case against Mr. Mosley. In its brief, the state argues that the instruction should not be viewed in isolation, and we actually agree, because the presence of correct law does not cure incorrect jury instructions as the Illinois Supreme Court found in People v. Hartfield. Trial counsel's failure to object was an error and clearly prejudicial to Mr. Mosley, as it allowed the state to argue that Mr. Mosley should have known that the firearms were stolen with no evidentiary basis. This would be the third proposition of the instruction you're referring to, correct, counsel? Yes, correct, Your Honor. And so my question is this, there is no IPI instruction, correct? Correct. All right, so my question is, isn't there an established case law that knowledge that property is stolen may be proven by circumstantial evidence? So, counsel, thank you for your question, Your Honor. There may be a case law, I'm not familiar with that specific case law, but the issue here is that the instruction was formed on law that was based on the statute, and that statute doesn't include that law. I believe we briefed that there is, there are statutes that include that type of language, but the statute expressly does not. And so that is an error that trial counsel should have caught because there's a different standard that was introduced by the state at the trial level. So as briefed, we asked... Consisting with case authority, why is it error? Or why is it clear and obvious error? It's clear and obvious. It's clear and obvious, I believe. Yes, Your Honor, yes. It's clear and obvious here because the state lowered the mens rea for the possession of stolen firearms. Again, the statute's language is clear. It's a knowledge requirement. It's not a reckless or negligence standard. And while the state doesn't use that explicit language, the requirement to have obtained those firearms in conditions that they should have known is not the language that's in the statute, Your Honor. So we are arguing it's plain error because this was a very blatant violation that prejudiced my client and did change the course of the trial, or at least makes those results unreliable. If Your Honors don't mind, I do have one more issue to address, and I'll do so as quickly as I can. Yet another one of trial counsel's decisions was an error and prejudiced Mr. Mosley when trial counsel failed to object to testimonial hearsay by Officer Blackburn. The United States Constitution provides that defendants have the right to confront the witnesses against them, and this means that defendants have the right to cross-examine those witnesses. Mr. Mosley could not... Counsel, is there any case authority that would have allowed this to come in as substantive evidence of Blackburn's testimony that these guns were listed as stolen in the Leeds NCIC system? Would there be any case authority that would allow that to come in substantively with respect to these charges? There is not in Illinois, Your Honor. And as briefed, there is none. So that is something that came up. We do have case law showing that there is not. Those types of statements, including in the form of affidavit, should have been subject to cross-examination, Your Honor. Was there any other evidence offered, direct or circumstantial, to show that these firearms were stolen other than Blackburn's testimony about what he saw was listed in that Leeds NCIC system? There is not, Your Honor. The only other kind of circumstantial evidence that the state offered was testimony from Mr. Pickens, which, again, is not my client. And he testified that he had bought guns on the street. Again, because of that jury instruction that was erroneous, that was the only kind of link the state had to show that those guns were stolen. But, again, there's no direct evidence or even circumstantial evidence that my client knew or had stolen those firearms, Your Honor. Thank you. Just to briefly conclude, we ask that the court remedy the errors posed in Issue 1 by reversing Mr. Mosley's convictions, remedy the errors posed in Issue 2 by granting a new trial on all of the charges, and remedy the errors posed in Issues 3, 4, and 5 by granting a new trial on the possession of stolen firearm charges. And if Your Honors don't have any other questions, I will conclude here. Questions, Justice Shomer? No questions. Any other questions, Justice Bollinger? No further questions, thank you. All right, thank you. You have an opportunity for rebuttal momentarily. Ms. Raymond, are you ready to proceed? Yes. May it please the court, Your Honors, counsel, my name is Stephanie Raymond. I represent the people of the state of Illinois in this matter. It's the state's position that the protective sweep was proper. They were there on an arrest warrant to arrest Pickens, who was a fugitive at that time for shooting his girlfriend, a 9mm of which was used to shoot her. However, it was not at that point, the gun was not found. So, police are inside the apartment, which the testimony evidence shows that it was at least two bedrooms. So, once inside the apartment, they have a fugitive laying next to a 9mm weaponry and cannabis. At that point, the officers did proceed to the bedrooms. The officer testified that he was doing the protective sweep, not just because children were present in the apartment, but he did stay to see if others were there, which under Bowie is proper because in either of those bedrooms is places that an attack could immediately be launched on police. There were other facts such as the resistance of defendant's girlfriend to let them in or let them see inside the apartment. You are dealing with somebody who did not want to be caught. You're on defendant's turf. So, once the officer started to perform the protective sweep, he went back into the bedroom. His testimony was that he kicked the pile of clothing because in his experience, there could have been an individual hiding underneath the clothing. At that point, the ammo fell from the pocket. They backed out, got the search warrant. It's the state's position that this was proper under either of the Bowie factors because officer safety is paramount in this situation. It was not that he was searching the pants pocket for an individual, just that he was searching for an individual in those bedrooms. The floor plan of the apartment is not in the evidence, but the state is not relying on that. The state is relying on the common sense of an apartment. There's no indication that it was an expansive apartment, that it was sprawling. There was a picture in the record of the apartment building indicating there was multiple units. So, common sense would dictate that an apartment is an area in which two bedrooms an individual could hide. So, protective argument counsel, assuming that the protective sweep was unlawful. When the officers entered the apartment, I asked this question to opposing counsel and they observed chickens. They observed the magazine, but the cannabis, they know that he was wanted for a shooting and they can't find the firearm. Could they not have obtained a search warrant based on those facts to establish a probable cause to search the apartment? That's my question. Now, opposing counsel said, did Blackburn testify that he did not have probable cause? So, what is your answer to that? I don't believe he specifically testified that he did not have probable cause at that point. The state does argue in their brief that he could have actually obtained a search warrant at that point. However, he did the protective sweep, as I've argued, for the police safety. There's no, the case law supports that at that point, cops are not required to back out guns drawn and just hope that there's no one else in the apartment. I believe the officers acted in good faith in their search. And it is our argument that it was proper at that time. So, regarding that, if the first issue, if there are no questions on that, I will move on and address counsel's other issues. And the reason I ask the question is based on people versus free holding that were lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information. The evidence seized pursuant to the warrant is extended. And that was the question as to whether or not probable cause existed just based on what the officers observed in plain sight when they entered the apartment to obtain a search warrant, even though it didn't happen. It's the state's position that we do believe that there was probable cause at that point. However, in the interest of officer safety and completion, at that point, he testified that he wanted to go ahead and make sure that there was no one else who could have been in the apartment. So, I do agree. I do believe that there was, the state believes that there was probable cause at that point. However, because of the nature of Pickens being a fugitive on the run for a shooting crime, the nature of their initial sort of entry into the apartment was, you know, they weren't stopped, but it wasn't, they were not welcome. There was, you know, these open things in sight. It's the state's position that the protective suite was proper. And even with the probable cause that they had at that point to get a search warrant. Thank you. Regarding issue three, the jury instructions, it's the state's position that, you know, the jury instructions when looked at in completion, all of the jury instructions that were given to the jury were proper. Knowledge is something that is case law has determined is common, and it's a common sense sort of definition, if you will. The jurors did ask a question, they did ask for the definition of a timely manner. So, it's the state's position that had they been confused or unsure of that particular element that they would have asked, as you know, they did ask other questions. So, the state believes that the jury instructions were proper. They were instructed on constructive possession, intent, all the things that were required, and when reading them all together as it should be, they were proper. Regarding the lead situation in issue four, it's the state's position that the officer performed that as an investigatory step. There is case law that supports that officers are allowed to testify regarding the investigative steps they took. He does say in his testimony that it was a formality that he was doing. Leads is something that is used by officers on a daily basis in their investigation. Counselor, excuse me, but wasn't it offered as substantive evidence of an element of this charge, the possession of a stolen firearm, that the firearm was stolen, wasn't it entered as substantive evidence? The state does not believe that it was. The state believes that he discussed, they asked him, there was no testimony regarding conversations that he had with any people who reported stolen guns or that there was any officer spoke to these people in these other cities where the guns came from. It was just, these are the guns we found during the search. I entered them into the system. They came back stolen. This is how I proceeded vis-a-vis the stolen firearms. The information in the leads NCHC system came from reports from people who own these guns and reported them stolen, correct? Yes, the people would have had to have reported them stolen. So why is that not hearsay? Because he didn't discuss any, there was no discussion of those people or any conversations that he had. It was just, this is the steps that I took to determine the origin of these firearms, which police do on a daily basis for weapons crimes and other things. Leads is a common... Ms. Raymond, let me ask the question this way. What was the substantive evidence as to the stolen guns then? What in the transcript of the record was the substantive evidence? So in addition to the leads, the evidence would be that the officer did testify that you cannot buy stolen guns legally. So there's, based on the officer's testimony, and there was some testimony from pickings that, you know, guns are, you know, often purchased in varying ways for varying prices that are not on the up and up. So it's the state's position that that would be part of the evidence as well. Okay, thank you. You're referring to Pickens' testimony or statements that he acquired the guns on the streets, correct? Yes, correct. So whether or not those guns he acquired were stolen or not is a no-no, correct? That's correct. However, he does, you know, discuss somewhat of a price and that, you know, again, common sense dictates you're not going to be buying a legal gun, you know, in that manner. However, there is no specific, you know, when dealing with his testimony, there's nothing specific. I mean, he's, you know, it's, the officer, however, does say that, you know, you're not going to be, you can't legally buy stolen guns. So if there are no other questions, the state would just ask that you affirm defendant's conviction and sentence. Thank you. Thank you. Ms. Thornton, rebuttal? Yes, Your Honors. I just wanted to address all the three issues that opposing counsel mentioned. Regarding issue one, there is no evidence, the state does brief this, but there is no evidence that the magazine merely fell out of that pocket. The language on the pocket is that it was found in the pocket. So there may not be express indication that the officers went into that pocket, but the officer certainly did not testify that it fell out or came out of the pocket, Your Honor. And then I wanted to address the states briefly about the states, mentioning my client's wife who came to the door. There's no indication that she was particularly harmful to the entry of a home. She was not happy to see officers, certainly, but there is no requirement for her to be happy. And Mr. Blackburn testified that he could see into the home as soon as he opened the door. So the initial encounter with Ms. Pitts, I believe, she did not, was not enough of a reason, enough of a trickable reason to be concerned under Bowie. Ms. Gordon, other than the fact that leads of these guns were stolen, was there anything else about the guns that would indicate they were stolen, such as defaced serial numbers or anything of that sort? I do not believe so, Your Honor, and I wanted to address that specifically. Yes, we don't necessarily have, I don't believe we have that in the record, Your Honor, but I wanted to say that the state says that that was not used as substantive evidence. Officer Blackburn's testimony about the leads in CIC search and on the record on 297, the state blatantly uses that information to indicate that the firearms were stolen. And any other information about the guns being stolen, again, comes from Pickens' testimony, which we argued in briefing was not reliable. To follow up, the record at 297, is that a closing argument? Correct. So that's the state's argument that the leads in CIC shows the results that they were stolen. Correct, Your Honor. I know it's not exactly analogous, but in a driving suspended or driving revoked case, we have a certified copy of a driving abstract from the Secretary of State's office. Here, we just have a leads printout. There's no certification. There's no, I know leads is used for the course of conduct or why we proceeded the way we did, but I'm not aware of any cases that says that is substantive evidence. The fact that a gun shows up in leads is stolen is determinative that it's actually stolen. Are you aware of any cases that says that? No, Your Honor. There is no case in Illinois specifically on this issue. It was at least that counsel is aware of. But if we take the further analogous driving abstract or affidavit, there is some case law indicating that that can be used as hearsay, especially when it's used for its truth. I think that the case law indicates that when it's not used for its truth, when it's actually used for a course of conduct, which is not true here, that it can be used without a hearsay issue. And Your Honor, do you have any other questions about that? Conceding that the gun charge convictions may be suspect, what evidence is there, what argument do you have why the drug charges should be remanded? Yes, so that goes to issue one and issue two, Your Honors. For issue one, as you know, we argued that counsel should have filed a suppression motion. Those objects would not have been found without that initial unconstitutional protective sweep. We also argued that without Mr. Pickens' testimony, the state really has almost nothing regarding any of the issues. And in fact, Pickens' testimony, if anything, kind of gave some of the state some of its argument, including the… So it's basically an ineffective assistance of counsel argument that should have filed a suppress and should have countered Pickens' testimony? Correct. Yes, that's correct. Yes, Mr. Pickens' testimony was the bulk of the state's case, especially that's indicated in its closing argument. And so that would be our… that's our position on that, on the drug charges. And just briefly, Your Honor, I wanted to address issue three, rather the jury instruction issue. The state contends, as it did in briefing, that knowledge is not… is a common word that the jury should have known. And first, I think if the state had to prove the knowledge element, then I think it was worthwhile that the state did not have two conflicting… two conflicting instructions on that matter. But then secondly, jury asked about constructive possession. That was the one of its questions. And while that's not an express indication that I didn't understand, it is… there is… it does raise questions as to whether the state understood or rather jury members understood what constitutes possession more generally. So I think that that is one reason to consider this. And the other reason is that the state offered it and the court offered it, rather, as the law. So we may not know exactly how the jury… I mean, we may not know exactly how the jury considered it, but there is… there is really good case law in the state of Illinois that conflicting instructions are grave error, Your Honor. So I would… I see your time is up, unless Justice Shulman or Justice Boehling have other questions. Justice Shulman? No questions. Thank you. Justice Boehling? No, thank you. All right. We appreciate your arguments. We will take the matter under advisement and issue a decision in due course.